UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
WILLIAM NORKUNAS,                      )
                                       )
            Plaintiff,                 )
                                       )
            v.                         )        CIVIL ACTION
                                       )        NO. 11-12183-WGY
HPT CAMBRIDGE, LLC, and CAMBRIDGE      )
TRS, INC.,                             )
                                       )
            Defendants.                )
_____)


<u>MEMORANDUM AND ORDER</u>

YOUNG, D.J.                                  September 18, 2013


**I.    INTRODUCTION**

William Norkunas ("Norkunas"), a disabled individual as
defined by the Americans with Disabilities Act of 1990 ("ADA"),
42 U.S.C. §§ 12101-12213, brought this suit after he visited the
Royal Sonesta Hotel Boston (the "Royal Sonesta") against HPT
Cambridge, LLC and Cambridge TRS, Inc., respectively the owner
and lessee of the Royal Sonesta.  Norkunas alleges that he
encountered several architectural barriers during his visit,
which denied him access to full and equal enjoyment of the
accommodations in violation of the ADA.

In adjudicating this case, this Court denied both a motion
to dismiss and a motion for summary judgment by the defendants.

See Elec. Clerk's Notes, Apr. 10, 2012; Elec. Clerk's Notes, Oct. 24, 2012, ECF No. 63.  Both oral arguments focused on whether Norkunas had standing to pursue the suit.

A three-day bench trial was held on November 19, 2012, November 21, 2012, and December 20, 2012.  See Elec. Clerk's Notes, Nov. 19, 2012, ECF No. 77; Elec. Clerk's Notes, Nov. 21, 2012, ECF No. 78; Elec. Clerk's Notes, Dec. 20, 2012, ECF No. 111.  The defendants again argued that Norkunas did not have standing to pursue this suit.  See Mem. Law Supp. Defs.' Mot. J. Partial Findings Fed. R. Civ. P. 52(c) 9-19, ECF No. 114.

This Court made certain findings and rulings from the bench.  See Findings & Rulings Tr., Dec. 20, 2012, ECF No. 117. These included that Norkunas had standing to pursue this suit, id. at 6:13-14, that the Royal Sonesta was indeed in violation of the ADA, see, e.g., id. at 7:16, 7:24-25, 8:2-3, and that an injunction requiring compliance by December 20, 2013, should issue, id. at 12:8-13.  After studying and deciding an outstanding issue regarding the required number and type of available suites, see J. Scope Inj., ECF No. 110, the Court issued its final injunction on February 14, 2013, see Order Entering Inj., ECF No. 121.

Having made its findings and rulings and having issued the injunction, the Court wishes to address two issues in this opinion.  First, the Court wishes to communicate more fully its

2

reasoning on the most contentious procedural issue in this case:
Norkunas's standing to bring this suit.  Second, this memorandum
announces the Court's award of attorneys' fees, costs, and
experts' fees as permitted under the ADA.  See 42 U.S.C.
§ 12205.

## II.  STANDING

### A.  Facts

William Norkunas suffers from post-polio syndrome and
frequently requires the use of a wheelchair or motorized
scooter.  See Trial Tr. vol. 1, 15:8-11, Nov. 19, 2012, ECF No.
104; Order ("Norkunas's Trial Mem.") ¶ 1, ECF No. 75.  While he
was born and grew up in Massachusetts, he now resides in
Florida.  Trial Tr. vol. 1, 15:3, 54:4.  Despite his change of
residence, Norkunas still has relatives living in the greater
Boston area, including his brother in Lowell, his brother-in-law
in Brockton, and his sister-in-law and niece in Framingham,
along with cousins, aunts, and an uncle in the greater Boston
area.  See id. at 76:5-8; Norkunas's Trial Mem. ¶ 2(B).
Moreover, Norkunas's deceased wife is buried in a cemetery in
Newton, Massachusetts.  Defs.' Trial Mem. 2 n.3, ECF No. 74.

Norkunas is not a newcomer to the world of ADA enforcement
suits.  He is employed as an ADA expert and Fair Housing
Accessibility Act specialist for Disability Assistance, Inc., a
Florida corporation, of which Norkunas is the sole principal and

employee.  See Trial Tr. vol. 1, 76:24-77:1.  In fact, he derives ninety-nine percent of his income from his employment as an ADA expert and has served as a paid ADA expert in more than one thousand lawsuits since 1992.  Id. at 77:2-8.

More recently, Norkunas has moved from being an expert to being a plaintiff in ADA Title III actions.  He has filed more than fifty such suits in the last four or five years.  Id. at 77:10-18.  During his travels, Norkunas often stays at multiple hotels in the same area, and he has filed Title III actions against more than half of the hotels he has visited during the year preceding his suit in this case.  See id. at 79:5-80:14.  He has filed at least twenty-three suits in the District of Massachusetts since February 2009, twenty of which have been against hotels.  Defs.' Trial Mem. 2; see also Trial Tr. vol. 1, 77:19-21.  These hotels are located across Massachusetts, including in Bedford, Boston, Brockton, Cambridge, Concord, Danvers, Foxboro, Framingham, Haverhill, Marlborough, Milford, Natick, Peabody, Plymouth, Shrewsbury, Springfield, Waltham, and Woburn.  Trial Tr. vol. 1, 78:21-79:4.

Norkunas readily admits that in selecting a hotel in which to stay, a "contributing reason" for him often would be whether the hotel is accessible to individuals with a disability.  See id. at 55:21-56:6.  He sees himself as a crusader for gaining equal access for disabled individuals.  See id. at 117:11-14.

4

During the trip and hotel stay that has led to this suit, Norkunas stayed in four different Boston area hotels on four consecutive nights.  See id. at 64:4-6.  He has filed suit against three of the four hotels.  Id. at 64:7-9.  In each suit, he alleged an intent to return to the hotel in April 2012 and booked a reservation.  After settling such suits, Norkunas cancelled each reservation.  Norkunas has stated that these hotels have acknowledged the existence of ADA violations and barriers to access and that his reservation cancellation was due to the hotels needing additional time to correct the barriers. Moreover, he insists that he will indeed return to check on whether these hotels comply with the ADA and the settlements and hopes that he will be able to fully enjoy the hotels' facilities, which, at present, fail to provide him with equal access.  See id. at 51:22-52:4.

After filing this suit on December 9, 2011, Norkunas did return and stay at the Royal Sonesta on June 16-17, 2012, and again on August 21-22, 2012.  See id. at 23:16-19.  Norkunas says that he wanted to stay at the Royal Sonesta because it was conveniently located near the airport and relatives and friends that he intended to see during his visits.  See id. at 59:5-11. Norkunas does hope to stay in the Royal Sonesta in the future once the barriers to access are corrected, as he plans to continue to return to the Boston area several times per year as

he has been doing for the past several years.  See id. at 53:7-15, 59:5-7.

   **B.   Legal Standard and Analysis**

   In order to demonstrate standing generally, (1) a plaintiff must have suffered an injury-in-fact -- "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)) (internal quotation mark omitted); (2) there must be causality -- "a causal connection between the injury and the conduct" of which the plaintiff complains, id.; and (3) there must be redressability -- "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," id. (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38, 46 (1976)) (internal quotation marks omitted).  "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561.

   Title III provides a limited set of remedies for private suits, including injunctive relief, restraining orders, or other similar relief.  42 U.S.C. § 12188 (incorporating by reference the remedies and procedures set forth in 42 U.S.C. section 2000a-3(a)).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive

relief . . . if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974); see also American Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992) (noting that the Supreme Court in City of Los Angeles v. Lyons, 461 U.S. 95 (1983), "reaffirmed the principle that past exposure to harm will not, in and of itself, confer standing upon a litigant to obtain equitable relief [a]bsent a sufficient likelihood that he will again be wronged in a similar way" (alteration in original) (quoting Lyons, 461 U.S. at 111) (internal quotation marks omitted)).  A plaintiff has standing to seek a prospective remedy only if he can show that he is "likely to suffer future injury." Lyons, 461 U.S. at 105.

"Indeed, every court to have considered the standing requirements under Title III of the ADA has held that in order for a private litigant to prove standing, she must show a risk of future harm." Blake v. Southcoast Health Sys., Inc., 145 F. Supp. 2d 126, 132-33 (D. Mass. 2001).  A risk of future harm exists where a plaintiff who has suffered an injury has a firm intention to return or where the plaintiff is being deterred from patronizing the business by the defendant's misconduct. See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 944 (9th Cir. 2011) (en banc) (holding that "an ADA plaintiff can establish standing to sue for injunctive relief either by

demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility").

Thus, in the case at bar, Norkunas could have argued that he is presently being deterred from patronizing the Royal Sonesta because it is not accessible to him.  Cf. Fiedler v. Ocean Properties, Ltd., 683 F. Supp. 2d 57, 68-73 (D. Me. 2010) (Woodcock, C.J.) (denying summary judgment on standing grounds where the plaintiff alleged an interest in visiting The Harborside, a hotel in Bar Harbor, Maine, but had never visited Bar Harbor and had no reservations at the hotel and noting that "in cases, such as this one, where a plaintiff has alleged an ongoing barrier to access, the injury is ongoing so long as 'the barrier remains in place,'" id. at 73 (quoting Dudley v. Hannaford Bros. Co., 333 F.3d 299, 305 (1st Cir. 2003))). Similarly, the First Circuit in Dudley v. Hannaford Bros. Co., 333 F.3d 299, suggested that where a disabled individual has suffered a harm and the harmful barrier remains in place, the individual does not have to attempt repeatedly to test it.  See id. at 305.  Instead, "the existence of a private right of action . . . depends upon whether the barrier remains in place."[1]

---

[1] While this is standing to bring a private right of action rather than standing for an injunctive remedy, the First Circuit has "recognized the similarity between the standing requirement and the standard for determining the availability of a private right of action to enforce Title III."  Disabled Ams. for Equal

Id.  The First Circuit also endorses a test "requir[ing] plaintiffs to show a real and immediate threat that a particular (illegal) barrier will cause future harm."  Id. at 305-06.

To determine whether a plaintiff's likelihood of returning and thus suffering future harm is sufficient, district courts typically consider these four factors: (1) the proximity of the plaintiff's residence to the place of public accommodation, (2) plaintiff's past patronage of the establishment, (3) the definiteness of the plan to return, and (4) the plaintiff's frequency of travel near the business.  See, e.g., Harris v. StoneCrest Care Auto Ctr., LLC, 472 F. Supp. 2d 1208, 1216 (S.D. Cal. 2007) (Burns, J.); Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 947 n.10 (C.D. Cal. 2005) (Carney, J.).  This analysis is based on facts as they existed at the time of the filing of the complaint.  See Steir v. Girl Scouts of the USA, 383 F.3d 7, 15 (1st Cir. 2004) ("Standing in the jurisdictional sense is based on the facts as they existed at the time the complaint was filed.").

Given that the public accommodation in this case is a hotel which is almost always used only when one is far away from his residence, the first factor should be judged carefully.  While some courts have said that proximity does not apply in the hotel

Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 65 n.7 (1st Cir. 2005) (citing Dudley, 333 F.3d at 306).

context, see Bodley v. Plaza Mgmt. Corp., 550 F. Supp. 2d 1085,
1088 n.4 (D. Ariz. 2008) (Silver, J.), others have argued that
it is actually proximity to what one wants to visit that matters
when hotels are at issue, cf. Fiedler, 683 F. Supp. 2d at 72
n.17 ("Seeking a room in a hotel across the street from the
plaintiff's mother's residence seems different than seeking one
at the other end of the country, and this fact could be relevant
to the underlying question, which is whether the past
discrimination is '[ ]likely to recur.'" (alteration in
original) (quoting Dudley, 333 F.3d at 304)).  Distilling the
factors used by other courts, this Court holds that the relevant
question ought be: is this disabled individual likely to need to
stay in a hotel in the area where this hotel is located in the
future?  After all, the barrier to access not only harms a
disabled individual when he is staying there, but also harms him
by deterring his stay and, thus, denying him a choice.  This
limitation in the range of choices is also a cognizable injury
under the ADA because the ADA is intended to provide disabled
individuals with the same access to fully enjoy the benefits of
all places of public accommodation.[2]

---

[2] This Court finds particularly convincing the Ninth
Circuit's en banc decision in Chapman v. Pier 1 Imports (U.S.)
Inc., 631 F.3d 939, for its analysis of standing for ADA
purposes.  The Ninth Circuit is also instructive in pointing out
that "when an ADA plaintiff has suffered an injury-in-fact by
encountering a barrier that deprives him of full and equal

In this case, Norkunas is a resident of Florida, but he has many reasons to travel to the Boston area.  He was born in Lowell.  Trial Tr. vol. 1, 15:24.  He has family across Massachusetts.  See id. at 76:5-8.  His wife is buried in a cemetery in Newton.  Defs.' Trial Mem. 2 n.3.  He has visited for business purposes such as providing expert advice and consulting services.  Norkunas's Trial Mem. ¶ 2(F).

Within the past five years, Norkunas has visited the Boston area dozens of times for work, to visit family, to visit his wife's grave, and to look at real estate he is interested in purchasing.  See id. ¶ 2(A)-(C), (F); Trial Tr. vol. 1, 73:3-13.  Nothing suggests that his travel to the area will decrease.  In fact, given the lawsuits he has filed in the District of Massachusetts, it is likely that he will have to visit Boston often just to continue this stream of litigation.

At the time of the filing of the suit, Norkunas had only stayed at the Royal Sonesta for one night.  Moreover, Norkunas

---

enjoyment of the facility due to his particular disability, he has standing to sue for injunctive relief as to that barrier and other barriers related to his disability, even if he is not deterred from returning to the public accommodation at issue." Id. at 944.  Norkunas falls in this camp of individuals who suffered an injury-in-fact, does not appear to be deterred from returning, and has standing to sue not only over the barriers he encountered, but also all other barriers related to his disability.  See id. ("[A]n ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to unencountered barriers related to his disability.").

had a reservation to return to the Royal Sonesta at the time he filed suit.  See Trial Tr. vol. 1, 66:14-17.  He proceeded to return and use the reservation on June 16, 2012.  See id. at 23:16-19.  He also returned to the Royal Sonesta at least one more time before trial.  See id.  Currently, while he has no definite plans to return to the Royal Sonesta, he claims that he will return to Royal Sonesta once it has corrected the accessibility issues.  See id. at 51:24-25.  It does appear that he will continue to return to the Boston area to visit family and attend family events such as the weddings of his nieces. See, e.g., id. at 19-23, 111:13-16.

Whichever test this Court uses, Norkunas passes the bar easily.  Norkunas had stayed at the Royal Sonesta before filing suit.  He has shown that at the time of that stay, the hotel had barriers to access which prevented his full enjoyment of the property, a right to which he, as a disabled individual, was entitled to under Title III of the ADA.  See Findings & Rulings Tr. 7-11.  Moreover, at the time he filed suit, the relevant time, he had a concrete plan to return, including a reservation. See Trial Tr. vol. 1, 66:14-23.  Norkunas testified to his plans to return to the Boston area several times per year in the future as he has done in the recent past.  See id. at 53:1-14. Moreover, Norkunas did return to stay at the hotel at least

twice more while this litigation was pending.[3]  Id. at 23:17-19.
Finally, Norkunas claims that he will return to the Royal
Sonesta once the barriers to access are corrected.  Id. at
51:24-25.

The defendants argued that Norkunas's stated intent to
return was merely a ruse for the purposes of litigation and that
this Court ought not credit it.  They point to Norkunas's
admission that ensuring compliance with the ADA is a motivation
for his intention to return.

This Court rejects that argument.  A plaintiff may be
motivated by a desire to return to ensure compliance with the
ADA; nonetheless, such a desire does not eviscerate the
plaintiff's intention to return, but may very well support it.
Cf. Access 4 All, Inc. v. Absecon Hospitality Corp., No. 04-6060
(JEI), 2006 WL 3109966, at *7 (D.N.J. Oct. 30, 2006) (Irenas,
J.) (ruling that the pursuit of litigation made the claim of
return more, not less, likely); Molski v. Price, 224 F.R.D. 479,
484 (C.D. Cal. 2004) (Cooper, J.) (finding standing where a
plaintiff's intention to return was based in part on checking
for compliance with the ADA).  But this Court is not limited to
this reasoning and does not rely on it.  Instead, this Court

---

[3] Norkunas likely does not argue that he was prevented from
returning by the barriers to access precisely because he has
returned to the Royal Sonesta at least twice since his original
stay.

rules that Norkunas has standing because he has a desire to
return to this area where many members of his family reside,
where his wife is buried, and where he was born, whether or not
he was also motivated to check on the ADA compliance of
businesses in the area.

This Court also rejects the defendants' repeated assertions
that Norkunas is merely a "tester."  This argument points out
that Norkunas has many similar cases pending in this and other
courts.  While this Court does not have to reach the issue
whether the ADA would allow testers, were it forced to reach
such an issue in the future, it would not reject it out-of-hand.
The reasoning of a former colleague regarding multiple suits by
a supposed ADA "tester" seems more than sound:

> [Defendant] also points to the number of cases filed
> by the same plaintiff in this jurisdiction.  Counsel
> have filed nine cases in this jurisdiction on behalf
> of [the plaintiff].   I am not impressed by this
> argument.  If the ADA were enforced directly by the
> government, as are, for example, the fair housing
> laws, it is likely that government lawyers would have
> reached out to disabled individuals -- "testers" as
> they are called -- to find out which businesses were
> complying and which were not.  [The named plaintiff]
> has functioned here as a "tester," which is entirely
> appropriate.

Iverson v. Braintree Prop. Assocs., L.P., No. 04cv12079-NG, 2008
WL 552652, at *3 n.5 (D. Mass. Feb. 26, 2008) (Gertner, J.).

Given the overwhelming evidence that Norkunas does plan to
visit the area in the future (and require hotel accommodation),

the Royal Sonesta's noncompliance with the ADA at the time of Norkunas's first visit, and this Court's conclusion that he should have the choice of staying at the Royal Sonesta when he returns, this Court holds that Norkunas does have standing to pursue injunctive relief because he has been harmed, is being harmed, and will continue, otherwise, to be harmed by the Royal Sonesta's noncompliance with the ADA.

## III. FEE AWARD

### A.   Entitlement to Attorneys' Fees and Costs

Under the ADA, a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. As Norkunas's actions led to a ruling that the Royal Sonesta was in violation of the ADA and the imposition of an injunction, Norkunas is a prevailing party who may be awarded attorneys' fees and costs. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603-04 (2001).

### B.   Calculating Reasonable Attorneys' Fees

To determine reasonable attorneys' fees, district courts begin by calculating the lodestar, the number of hours reasonably worked multiplied by fair hourly rates. See Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011). The lodestar figure can then be adjusted based on the

individual factors of the particular case.  See McDonough v.
City of Quincy, 353 F. Supp. 2d 179, 183 (D. Mass. 2005).

The burden of producing documentation to support the fee
request is on the moving party.  See Hutchinson, 636 F.3d at 13.
Reasonable hours are determined by reviewing this documentation
and "subtract[ing] duplicative, unproductive, or excessive
hours."  Gay Officers Action League v. Puerto Rico, 247 F.3d
288, 295 (1st Cir. 2001).  Reasonable rates are determined by
looking at the prevailing community rates while accounting for
the experience and skill of the attorney, see id., and the
expertise required to perform the task, see Grendel's Den, Inc.
v. Larkin, 749 F.2d 945, 951 (1st Cir. 1984).

### 1. Time Spent

To determine the hours reasonably expended by Norkunas's
attorneys, this Court examined the billing records submitted
with the motion for attorneys' fees.  This Court excluded or
reduced those hours that were inadequately documented,
"excessive, redundant, or otherwise unnecessary."  Hensley v.
Eckerhart, 461 U.S. 424, 434 (1983).

The attorneys in this case were Lawrence A. Fuller
("Fuller") of Fuller, Fuller & Associates, P.A., and George W.
Skogstrom, Jr. ("Skogstrom") and Jenifer M. Pinkham ("Pinkham")
of Schlossberg, LLC.  Pl.'s Verified Appl. Att'ys' Fees, Costs &
Experts' Fees, & Accompanying Mem. Law ("Norkunas's Fee Req.")

7-8, ECF No. 122.  Fuller claimed fees for 564.10 hours[4] expended

as well as 10.80 hours expended by a paralegal at his law firm.

See Norkunas's Fee Req. 9; Pl.'s Reply Defs.' Resp. Pls.'

Verified Appl. Att'ys' Fees, Costs & Experts' Fees, Ex. 1,

Invoice Fuller, Fuller & Assocs. & Schlossberg LLC ("Invoice"),

ECF. No. 124-1.  Skogstrom claimed 68.50 hours[5] expended, while

Pinkham claimed 81.30 hours.  See Invoice 17-47.

The defendants challenged these hours for various reasons,

including that the hours were expended on frivolous and

unnecessary motions, working with unnecessary experts,

unproductive tasks, and travel for Fuller from Florida.  See

Defs.' Resp. Pl.'s Verified Appl. Att'ys' Fees, Costs & Experts'

Fees ("Defs.' Fee Resp.") 6-12, ECF No. 123.  They also argued

that the insufficiency of the billing records ought lead this

Court to further reduce the compensable time.  See id. at 12-13.

---

[4] Norkunas's attorneys submitted their final invoice on
March 12, 2013.  See Pl.'s Reply Defs.' Resp. Pls.' Verified
Appl. Att'ys' Fees, Costs & Experts' Fees, Ex. 1, Invoice
Fuller, Fuller & Assocs. & Schlossberg LLC, ECF. No. 124-1.  In
it, Fuller claims 474.30 hours for legal work and 89.80 hours
for travel time.  Id.  Fuller, however, claims a total of only
519.95 hours, which includes a fifty-percent reduction for all
travel time (except a trip to the airport on August 21, 2012,
which was claimed at the full rate).  See id. at 7, 15.  The
Court starts with the full hourly calculations and will reduce
those travel hours later.

[5] The Court includes all hours Skogstrom has recorded
although he has (wisely) not charged for some of these hours
spent in conference with his colleagues.  The Court will exclude
the "write-down" hours later.

This Court rules that the motion for sanctions filed during the trial was unnecessary and reduces Fuller's time by 7.9 hours as a result.[6]  The Court also reduces the travel time by fifty percent.  See Hutchinson, 636 F.3d at 15 (stating that travel time is "calculated at an hourly rate lower than that which applies to the attorney's substantive labors").  As there are 89.8 travel hours, the Court reduces Fuller's time by fifty percent for travel, or 44.9 hours.  This Court, therefore, finds that Fuller reasonably expended 511.3 hours.

The Court, however, explicitly rejects the contention that Fuller's pretrial travel time should be excluded entirely, see Defs.' Fee Resp. at 11-12.  The Royal Sonesta is a hotel.  Thus, the majority of its customers are likely to be from out of town.  Therefore, if they fail to comply with the ADA, then they are likely hurting an out-of-town, disabled potential plaintiff.  Should this aggrieved customer decide to file suit, he has a choice of hiring counsel in Boston ("local counsel") or counsel near the area where he lives ("neighboring counsel").  This choice is likely informed by his familiarity with the lawyer, where most individuals will be more familiar with neighboring attorneys rather than attorneys local to places they visit, and desire to assert control over the attorney and litigation.

---

[6] The Court did not credit time spent preparing the sanctions motion on November 15, November 30, December 2, and December 4, 2012.  See Invoice 12-13.

A client should control both his lawyer and the litigation. See, e.g., Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 202 (1st Cir. 1995) (discussing a client's "fundamental right to control her own litigation").  No doubt, it is easier to assert control over an attorney through face-to-face meetings.  Thus, because it is easier to meet with neighboring counsel regularly, neighboring counsel is easier to control.

Certainly, Norkunas could fly from Florida to Boston to meet local counsel, but he should not be required to do so. This significant commitment of time is not likely to be made. Moreover, the travel itself, though made easier by the enactment of the ADA, is likely still difficult for a disabled individual and should not be expected.  Thus, requiring plaintiffs to hire local counsel is not only an unfair burden to place on a plaintiff, but also would likely result in less control for the client over the litigation.

This Court holds that all 10.8 hours expended by the paralegal at Fuller's law office are compensable.

Skogstrom also spent 0.5 hours on the unnecessary motion for sanctions.  See Invoice 35.  Skogstrom included some hours at "no charge" as a "write-down."  The Court takes account of these 4.25 hours here.  Moreover, he included travel time in block billing that accounts for 7.75 hours.  Travel time is typically compensated to account for only half of the time

actually spent travelling.  _See, e.g._, Diaz v. Jiten Hotel
Mgmt., Inc., No. 08-10143-WGY, 2013 WL 1080534, at *2 (D. Mass.
Mar. 15, 2013); cf. Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir.
1983) (finding that half of the reasonable regular rate is
reasonable travel compensation).  Because Skogstrom's block
billing has given this Court no way to differentiate between the
travel time and productive time in these blocks, the Court
reduces the hours expended in their entirety by half, or 3.88
hours.

Finally, both Skogstrom and Pinkham have employed block
billing.  Block billing is generally disfavored by courts and
sanctioned by reducing the fee.  _See, e.g._, EEOC v. AutoZone,
Inc., No. 10-11648-WGY, 2013 WL 1277873, at *8 (D. Mass. Mar.
29, 2013).  The First Circuit has found that a global reduction
to sanction block billing is not inappropriate.  Torres-Rivera
v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008).  Given the
use of block billing and failure to allocate time to specific
tasks, the Court deems that a twenty-percent global reduction to
the lodestar hours is reasonable.  This reduction is applied
after the specific deductions.  This reduction accounts for
11.98 hours for Skogstrom.  This Court, therefore, finds that
Skogstrom reasonably expended 47.90 hours.

Pinkham included 1.00 hours at "no charge" as a "write-
down."  She also included travel time in block billing that

accounts for 37.50 hours.  Because her block billing has given this Court no way to differentiate between the travel time and productive time in these blocks, the Court reduces the hours expended in their entirety by half, or 18.75 hours.  Finally, the Court takes the twenty percent universal deduction from her hours for general block billing.  This reduction accounts for 12.31 hours.  This Court, therefore, finds that Pinkham reasonably expended 49.24 hours.

### 2.   Reasonable Hourly Rates

Courts ought consider "the prevailing market rates in the relevant community" when called upon to determine a reasonable hourly rate for attorneys' fees.  Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996) (quoting Blum v. Stenson, 465 U.S. 866, 895 (1984)) (internal quotation marks omitted).  Prevailing market rates are "those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.  Moreover, courts may take account of many factors in determining reasonable hourly rates, including "the type of work performed, who performed it, the expertise that it required, and when it was undertaken."  Grendel's Den, 749 F.2d at 951.  The party requesting the rate has the burden of demonstrating its reasonableness.  Blum, 465 U.S. at 895 n.11.

Norkunas requests hourly rates of $425 per hour for Fuller, $315 per hour for Skogstrom, and $265 per hour for Pinkham, citing the experience of the attorneys, the difficulty of the case, and comparable rates in the community for such cases. Norkunas's Fee Req. 4-9.  The defendants argue for the hourly rate to be $350 per hour for Fuller, $250 per hour for Skogstrom, and $230 per hour for Pinkham.  Defs.' Fee Resp. 2-6. The defendants cite many of Fuller's own cases to argue that no court has ever set a reasonable hourly rate for his work above $350 per hour and that such a figure represents a reasonable rate given the nature of the legal questions involved.  See id. at 2-5.  The defendants criticize the requested hourly rate for Skogstrom by pointing out that he served only as local counsel and did little substantive work.  See id. at 5.  The defendants acknowledge that the work Pinkham, an associate, did "outstripped that of her partner," id. at 5, but they argue that she should receive at most twenty-four percent more than the highest hourly rate awarded in this district to any other associate, id. at 5-6.

This Court finds that the reasonable hourly rate for Fuller is $350.  The rate of $425 he requests was found to be reasonable in Hutchinson, 636 F.3d at 16, but the First Circuit in that case explicitly called that an "unusually complicated case."  Id. at 14.  The case before this Court was

straightforward.  The defendants certainly fought hard, forcing the plaintiffs to prevail at trial, but this greater effort is compensated by way of more hours expended rather than through a higher rate per hour.  The hourly rate award Fuller received in a similar ADA case, Norkunas v. Brossi Bros. Ltd. Partnership, No. 10-11949-MBB, 2012 WL 772047, at *9 (D. Mass. Mar. 7, 2012) (Bowler, M.J.) (awarding $325 per hour to Fuller), is instructive and appropriate as a starting point.  Individual factors in this case, such as having a trial and arguments over a complex standing issue, leads this Court to conclude that $350 per hour is a reasonable rate of compensation for Fuller.

Skogstrom did little substantive work on this case.  His work was certainly no more complex than when he served as local counsel in Brossi Bros., where he was awarded a rate of $250 per hour.  See 2012 WL 772047, at *9.  Therefore, a rate of $250 per hour is reasonable for his work on this case.

Pinkham may be just an associate, but her work on the case, particularly what could be observed in the courtroom, was as good as any of the partners.  While the defendants may recognize that her work "outstripped that of her partner," Defs.' Fee Resp. 5, they still argue that she should receive a lower rate of compensation than the partner.  This Court disagrees.  Pinkham's work was more complex than her partner's work.  It was well executed.  A rate of compensation of $265 per hour is

certainly reasonable given her involvement in direct and cross examinations, arguments, and nearly all other aspects of trial.

This Court rules that the reasonable hourly rate for a paralegal is $100 per hour.  See Rogers v. Cofield, No. 08-10684-MBB, 2013 WL 1325034, at *21 (D. Mass. Mar. 31, 2013) (Bowler, M.J.).

| Name | Hours | Rate | Lodestar Total |
|------|-------|------|----------------|
| Fuller | 511.43 | $350 | $178,955.00 |
| Skogstrom | 47.90 | $250 | $11,975.00 |
| Pinkham | 49.24 | $265 | $13,048.60 |
| Paralegal | 10.80 | $100 | $1,080.00 |

### 3.  Final Adjustments

Having established the lodestar base, this Court now makes two final adjustments.  The lodestar may be adjusted for a variety of factors including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances; (8) the amount involved and results obtained as a result of the attorneys' services; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; [and] (12) awards in similar cases.

McMullen v. Schultz, 428 B.R. 4, 11 (D. Mass. 2010) (Gorton, J.)
(quoting In re Smuggler's Beach, 149 B.R. 740, 743 (Bankr. D.
Mass. 1993) (Feeney, Bankr. J.)).  A plaintiff who, like
Norkunas, prevails on only some of multiple claims may have his
attorneys' fees reduced.  See Coutin v. Young & Rubicam P.R.,
Inc., 124 F.3d 331, 339 (1st Cir. 1997).  Such a reduction,
however, is only appropriate if both the successful and
unsuccessful claims arose from the same set of facts or were
underpinned by interrelated legal theories.  See Bogan v. City
of Boston, 489 F.3d 417, 428-29 (1st Cir. 2007).

      Norkunas argues that no fee reduction should be taken from
the lodestar.  See Norkunas's Fee Req. 4.  The defendants argue
that the lodestar amount should be reduced by at least two-
thirds due primarily to Norkunas's limited success.  See Defs.'
Fee Resp. 14-20.

      In this litigation, the plaintiff achieved significant
success not only in getting voluntary changes at the Royal
Sonesta,[7] but also a twenty-point injunction from this Court, see
Order Entering Inj.  Moreover, as in Brossi Bros., "the facts
arose from a single and unified set of facts . . . .  [As
such,] [a]n adjustment on a claim by claim basis is therefore
not appropriate."  2012 WL 772047, at *10.  On top of that, much

---

      [7] Attorneys' fees are not available for these voluntarily
changes.  See Buckhannon Bd. & Care Home, 532 U.S. at 605-06.

of the time spent by the attorneys on this case was spent on the
threshold issue of standing rather than on individual successful
or unsuccessful claims.  This Court, however, recognizes that
some of the time spent in this litigation was spent on
unsuccessful claims and that such time did not contribute to
success on other claims.  As such, it deems a twenty percent
reduction to the lodestar amounts appropriate.

Second, the Court noted in its Findings & Rulings that:

> In Exhibit 10, I have been given a photograph which
> purports to show a hook too high to be used.  I find
> as fact that below that hook there was another hook at
> the appropriate level.  The Court views what at best
> is completely sloppy evidence handling and
> presentation and at worst is a fraud on the Court with
> grave suspicion. . . .  That photograph in Exhibit 10
> never should be put before the Court.  The Court will
> take care of that in the award of attorneys' fees.

Findings & Rulings Tr. 10.  It turns out that there was only one
hook on the door and that the second, lower hook is located on
the stall wall.  See Norkunas's Fee Req. 15.  Experts acting on
behalf of Norkunas claim to have missed this lower hook during
their first inspection of the stall.  See id. at 16 ("Upon first
inspection, [the experts] simply did not see any hook as it was
not lower down on the bathroom stall door where they looked or
photographed.")  These experts were inspecting the stall.  They
missed a hook on the wall of this limited area they inspected,
suggesting a sloppy inspection at best.  While Norkunas claims
that neither expert "had any intent to deceive the Court or

present sloppy evidence," id., sloppy evidence was presented. This Court deducts $20,000 from the attorneys' fees granted for the two trial counsel, Fuller and Pinkham, with the $20,000 deduction allocated proportionately.  These final adjustments lead to the following final total:

| Name | Lodestar Total | 80% of Lodestar | Final Total |
|------|----------------|-----------------|-------------|
| Fuller | $178,955.00 | $143,164.00 | $124,523.20 |
| Skogstrom | $11,975.00 | $9,580.00 | $9,580.00 |
| Pinkham | $13,048.60 | $10,438.88 | $9,079.68 |
| Paralegal | $1,080.00 | $864.00 | $864.00 |

C.  **Costs**

This Court may award reasonable and necessary costs to the prevailing party.  See Culebras Enters. Corp. v. Rivera-Rios, 846 F.2d 94, 103 (1st Cir. 1988).  Norkunas requests costs in the amount of $14,626.86 for Fuller, Fuller & Associates and $178.00 for Schlossberg, LLC.  Norkunas's Fee Req. 17.  This Court excludes the following from costs as non-reimbursable overhead: in-house photocopies, Fed Ex costs, costs for long distance calls, costs for meals, parking costs, taxi costs, and other miscellaneous costs.  See, e.g., Rolland v. Cellucci, 106 F. Supp. 2d 128, 145 (D. Mass. 2000) (Neiman, M.J.).  As this Court stated above in section III.B.1, the Court declines to reject the hiring of an attorney who resides and practices near

27

Norkunas's home.  As such, the Court approves reimbursement of travel costs including airfare and hotel.  The Court, however, rejects reimbursement of rental cars.[8]  The reimbursement is summarized below:

Fuller, Fuller & Associates, P.A.

| Costs Incurred | Requested Amount | Awarded Amount |
|---|---|---|
| Service of Process & Court Fees | $550.00 | $550.00 |
| In-House Photocopies | $340.48 | $- |
| Fed Ex Shipments | $237.39 | $- |
| Long Distance Calls | $48.30 | $- |
| Court Reporter Fees | $1,207.70 | $1,207.70 |
| Re-Inspection Fee | $750.00 | $750.00 |
| Airfare | $5,496.96 | $5,496.96 |
| Hotel | $3,762.37 | $3,762.37 |
| Taxi/Meals/Parking/Miscellaneous | $1,437.07 | $- |
| Rental Car | $796.59 | $- |
| **Total Expenses** | **$14,626.86** | **$11,767.03** |

Schlossberg, LLC

| Costs Incurred | Requested Amount | Awarded Amount |
|---|---|---|
| Parking | $95.00 | $- |
| Other | $83.00 | $83.00 |
| **Total Expenses** | **$178.00** | **$83.00** |

**D.  Experts' Fees**

Where expert witness fees are deemed reasonable litigation expenses, they may be reimbursed.  See 42 U.S.C. § 12205; Lovell v. Chandler, 303 F.3d 1039, 1058 (9th Cir. 2002).  Norkunas

---

[8] The Court denies reimbursement for rental cars in order to avoid the perverse incentive of using reimbursable rental cars rather than non-reimbursable taxis where taxis are cheaper than rental cars.

requests fees for four experts: (1) $47,120.00 for Ken Wynn

("Wynn"); (2) $1,849.12 for Rogerio Orlando ("Orlando"); (3)

$3,332.50 for Andrew Bedar ("Bedar"); and (4) $600.00 for Howard

J. Schneider ("Schneider").  See Norkunas's Fee Req. 20.  The

defendants do not contest that in the case at bar reimbursement

for expert fees would be reasonable, but contest the

reasonableness of the amounts themselves.  See Defs.' Fee Resp.

22-24.

Neither Bedar nor Schneider testified during the trial.

While this Court credits Norkunas's assertion that Bedar was

hospitalized during the trial, see Norkunas's Fee Req. 20, this

Court will not award expert witness fees for individuals who did

not testify at trial and, thus, did not contribute to the

result.[9]  This Court, however, makes one exception.  The Court

explicitly asked for more information regarding conflicting

federal and state regulations that govern bathtub controls.

Bedar spent 1.75 hours in total researching the conflicting

regulations and providing information about them to Fuller.  The

Court will reimburse this 1.75 hours at an hourly rate of

---

[9] According to Norkunas, Schneider is a CPA who reviewed
corporate financial records and was prepared to testify had the
defendants argued that they were financially unable to
accomplish improvements to the facility.  See Norkunas's Fee
Req. 20-21.  A skilled attorney, like Fuller, should be able to
argue from the financial records themselves that the defendants
could accomplish the improvements.  Clearly, no such expert was
necessary, and the expense was not reasonable.

$155.00.  Norkunas's Fee Req., Ex. 7, Expert Fees Sought ("Expert Fees") 13, ECF No. 122-6.  Thus, Norkunas should be awarded $271.25 for costs related to work performed by Bedar.

After Bedar was hospitalized, his associate, Orlando, attempted to testify as an expert in his place.  Orlando was allowed to testify as a fact witness, but had not prepared an expert report and did not testify as an expert.  As such, a payment of an expert witness fee for his work would be unreasonable, and this Court declines to reimburse Norkunas for any costs associated with Orlando.

Wynn was the primary expert used by Norkunas.  Norkunas seeks reimbursement for 241.6 hours billed by Wynn.  See id. at 4-9.  This Court deems this billing excessive and grossly unreasonable.  Some examples include spending 38.5 hours in total on preparing for a 1.5-hour deposition and about 2 hours of testimony at trial, billing for all (14.5) hours of trial attendance at a rate seventy-five percent higher than his standard rate of $200 while testifying for only 2 hours, billing 24.1 hours for drafting a straightforward Rule 34 inspection report, and spending 79.1 hours for phone calls and conferences regarding the property.[10]  See id. at 4-9.

---

[10] It is unclear with whom Wynn was conferencing, as no attorney on the case (nor all attorneys cumulatively) appears to have spent anywhere near this much time on the phone with expert witnesses.

This Court reduces the time of trial attendance by seventy-five percent while allowing Wynn to be reimbursed at a rate seventy-five percent higher than his standard rate for the remaining hours, resulting in a net reduction of 8.2 hours.

Moreover, while this Court recognizes the reasonableness of Norkunas hiring an attorney who practices in the area where Norkunas resides, the same considerations do not apply to expert witnesses.  A Boston-based expert witness could have been hired. Thus, Wynn's travel time from Florida is not reimbursable to its full extent, has been reduced by ninety percent to account for the unnecessary travel to Boston from Florida, and is paid at fifty percent of the standard rate, resulting in a reduction of 34.8 hours.

Finally, the Court reduces the rest of Wynn's billed hours as it deems reasonable, including a reduction of ninety percent for the excessive phone call and conference billing, seventy-five percent for too much time spent on drafting reports, fifty percent for time entries where Wynn otherwise billed for more time than reasonably necessary, and at times zero percent (no reduction) where Wynn spent an appropriate amount of time.  The Court also accounts for a higher rate of billing for time spent during a deposition.  In total, this results in a reduction of 135.1 hours for these matters and a total reduction of 178.1 hours.  The Court deems the resulting 63.5 hours as a reasonable

amount of time for Wynn to have spent on this case.  Billed at his reasonable hourly rate of $200, the Court awards Norkunas $12,700 as reimbursement for the expert witness cost of retaining Wynn.

## IV.   CONCLUSION

For the foregoing reasons, this Court AWARDS Norkunas attorneys' fees in the amount of $144,046.88, costs in the amount of $11,850.03, and expert witness fees in the amount of $12,971.25.

**SO ORDERED.**

/s/William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE